UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MICHAEL LOCK,
    Petitioner,

v.            Case No. 15-C-0047

BRIAN FOSTER, Warden,
Waupun Correctional Institution,
    Respondent.

## DECISION AND ORDER

Michael Lock petitions for a writ of habeas corpus under 28 U.S.C. § 2254. He challenges his Wisconsin convictions for ten offenses relating to his involvement in a prostitution conspiracy.

## I. BACKGROUND

In approximately 2007, state and federal authorities created a joint task force to investigate Lock's suspected criminal activity, which involved, among other things, robbing and murdering drug dealers and operating a prostitution ring. In 2007, the task force's efforts resulted in four criminal cases being filed in state and federal court. First, in July 2007, the State of Wisconsin charged Lock with kidnapping and possession of cocaine with intent to deliver. At the same time, the United States charged him with 20 counts of mail and wire fraud. Later, in October 2007, the state charged Lock with two counts of first-degree intentional homicide. Those charges were consolidated with the pending state case involving the kidnapping and drug charges. Finally, in December 2007, the state charged Lock with ten counts arising out of allegations that he and two codefendants operated a prostitution ring in the Midwest.

1

In July 2008, the state tried Lock on the homicide, kidnapping, and drug charges. The jury found him guilty on all counts. The court sentenced him to two consecutive life sentences for the homicides and to consecutive sentences on the kidnapping and drug charges.

When Lock was sentenced on these charges, both the federal case against him and the state prostitution case were in pretrial stages. In November 2008, the federal government took Lock into custody for trial on the federal charges, which began in December 2008. He was convicted and remained in federal custody until February 12, 2010, when he was sentenced.

During the approximately 14 months in which Lock was in federal custody, prosecutors in the prostitution case attempted to have him returned to state custody for proceedings relating to those charges. In early 2009, the state issued a writ of habeas corpus *ad prosequendum* to the federal authorities, asking them to produce Lock in state court for a pretrial hearing. But the federal authorities informed the state that they would not honor the writ or transfer Lock into state custody until after he was sentenced on the federal charges. Given the federal government's position, prosecutors asked the state court to adjourn proceedings in the prostitution case, which it did.

In July 2009, Lock sought dismissal of the prostitution charges on the ground that his speedy-trial rights had been violated. The trial court denied the motion, finding that the delay was attributable to the federal government's refusal to produce Lock in state court. The court also determined that there was no foreseeable time in which Lock would be available for trial, and it severed the charges against him from the charges against his codefendants.

On February 12, 2010, Lock was returned to state custody, and proceedings on the prostitution charges resumed. However, on February 25, 2010, Lock's counsel moved to withdraw based on a conflict of interest. The court granted the motion and appointed Lock new counsel. Lock's new counsel obtained an adjournment of the trial so he could prepare. Lock's trial finally occurred in September 2010.

At trial, much of the state's evidence consisted of testimony by participants in the prostitution operation. Part of Lock's defense was to argue that those witnesses were lying in exchange for concessions from the state in their own criminal cases. One such witness, Edward Hankins, testified about the inner workings of the prostitution ring. On cross-examination, Lock's counsel elicited the following testimony:

> Q. Let me talk about these—your conversations with Michael Lock. You actually wrote a letter to the D.A. sayin' that you want credit to testify against Michael Lock, correct?
>
> A. Yes, I wrote the district attorney.
>
> Q. And you told—
>
> A. I told him that I would be willin' to testify if he needed me against both Mike Lock and my sister as well as the other girls.
>
> Q. And you want that for consideration and assistance in your existing sentence, correct?
>
> A. None of that was ever promised to me. None of that was ever discussed between me and the district attorney.
>
> Q. My question is in the letter that you wrote to the district attorney you asked him—you told him you're willing to testify and you wanted consideration for that testimony in your sentence. That's what you wanted, right?
>
> A. Yes.
>
> Q. Now, remind me again, [you have] ten criminal convictions, correct?
>
> A. That's correct.

ECF No. 10-5 at 265–66.

The jury convicted Lock on all counts, and the court sentenced him to 28 years of initial confinement and 20 years of extended supervision. On direct review, Lock raised two arguments that are relevant to his federal habeas petition. First, he argued that the delay in bringing him to trial violated his speedy-trial rights. Second, he argued that the prosecutor committed misconduct by failing to say something when Hankins testified that the district attorney had not promised him anything in exchange for his testimony. Lock argued that the prosecutor had a duty to speak up because, a few months after Hankins testified, the prosecutor supported Hankins' motion for a sentence reduction in his own criminal case.

The Wisconsin Court of Appeals rejected Lock's arguments and affirmed his conviction. With respect to the speedy-trial issue, the court reasoned that although the delay was lengthy and presumptively prejudicial, it was not caused by the state. Instead, it was caused by the federal government's refusal to produce Lock for trial. Further, the court determined that the delay was not prejudicial. The court observed that, during the delay, Lock was already serving life sentences for the homicides, and thus the delay did not result in additional custody. The court also rejected Lock's argument that he was prejudiced by the delay because the state was able to use the additional time to convince witnesses to testify against him. The court observed that Lock presented "no evidence that the fourteen-month period contributed in any way to his co-defendants' decisions to testify against him." ECF No. 10-3 at 164.

The court of appeals also rejected Lock's argument that the prosecutor committed misconduct by remaining silent when Hankins testified that he had not been

promised anything in exchange for his testimony. Lock argued that the prosecutor's remaining silent was equivalent to allowing the witness to give testimony that the prosecutor knew was false. That was so, Lock argued, because the prosecutor likely knew that he intended to grant Hankins concessions for his testimony against him. The court rejected this argument because Hankins already testified that he hoped to gain concessions through his testimony and because there was no evidence that the prosecutor knew at trial that he intended to grant Hankins concessions for his testimony.

After the court of appeals issued its decision, Lock sought review by the Wisconsin Supreme Court, which was denied. Lock then filed his federal habeas petition. His initial petition raised the speedy-trial and prosecutorial-misconduct claims that he had exhausted in state court. Later, Lock moved for permission to file an amended petition adding claims of ineffective assistance of trial and appellate counsel, and a second claim of prosecutorial misconduct. Because Lock had not exhausted these claims in state court, Lock asked me to stay the petition under *Rhines v. Weber*, 544 U.S. 269 (2005), while he returned to state court to exhaust. I granted both the motion to file an amended petition and the motion to stay. However, after the stay had been in place for many years without Lock's having initiated state-court proceedings, I lifted the stay and ordered Lock to file a brief in support of his petition. In response to my order, Lock filed a one-page brief in which he asks me to review "the last court's decision" to determine whether it was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. *See* ECF No. 36. The respondent filed a brief in opposition to the petition in

5

which he addressed the two claims that Lock had exhausted in state court. Lock did not file a reply brief.

I will construe Lock's one-page brief as incorporating the arguments his appellate counsel made in her briefs in the Wisconsin Court of Appeals concerning the speedy-trial and prosecutorial-misconduct claims. Because Lock does not develop legal arguments in support of his ineffective-assistance claims or his second prosecutorial-misconduct claim, I deem them forfeited and will reject them without further discussion. *See Pole v. Randolph*, 570 F.3d 922, 937 (7th Cir. 2009) (failure to develop argument in support of habeas claim in the district court results in forfeiture).[1]

## II. DISCUSSION

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies to a habeas petition filed by a person in custody pursuant to a judgment of a state court. *See* 28 U.S.C. § 2254. It contains a deferential standard of review that prevents a federal court from granting the writ with respect to any claim that was adjudicated on the merits in state court unless the petitioner shows that the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Id.* § 2254(d). The Wisconsin Court of

---

[1] Because Lock did not exhaust his ineffective-assistance claims or his second prosecutorial-misconduct claim, the amended petition is technically a "mixed" petition under *Rose v. Lundy*, 455 U.S. 509 (1982). Although federal courts cannot grant relief on claims that appear in a mixed petition, such claims may be denied on the merits. *See* 28 U.S.C. § 2254(b)(2). For the reasons stated in this opinion, Lock is not entitled to relief on any of the claims that appear in the amended petition, and therefore I will deny the petition on the merits rather than dismiss it as mixed.

Appeals adjudicated Lock's speedy-trial and prosecutorial-misconduct claims on the merits, and therefore AEDPA's standard of review applies.

**A.     Speedy Trial**

The Sixth Amendment affords a criminal defendant a right to a speedy trial. *See, e.g., Barker v. Wingo*, 407 U.S. 514, 515 (1972). The Supreme Court has declined to create bright-line rules governing this right. *Id.* at 522–30. Instead, courts confronted with speedy-trial claims must balance four factors: the length of the delay in bringing the defendant to trial, the reason for it, the defendant's assertion of his right, and prejudice to the defendant. *Id.* at 530.

In adjudicating Lock's speedy-trial claim, the Wisconsin Court of Appeals applied this four-factor balancing test. It concluded that although the delay was lengthy and Lock had asserted his speedy-trial rights, the reason for the delay, coupled with the lack of prejudice to Lock, prevented the delay from violating the Sixth Amendment. This conclusion was not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. Nor was it based on an unreasonable determination of the facts.

The reason for the delay, as the court of appeals observed, was the federal government's refusal to produce Lock for proceedings in state court until he had been sentenced on his federal convictions. So long as this refusal was not orchestrated by state prosecutors, it would have fully justified the delay. *See United States v. Richardson*, 780 F.3d 812, 816–17 (7th Cir. 2015) (recognizing that waiting for a separate sovereign to finish prosecuting the defendant is a valid reason for delay). In state court, Lock argued that because all four of his criminal cases arose out of a joint

federal-state task force, the state must have been responsible for the federal government's refusal to produce him sooner. But the state court determined that, although the criminal cases had a common origin in the joint task force, Lock had not shown that state prosecutors controlled the federal government's decision to retain custody until he had been sentenced on the federal crimes. That determination was not unreasonable. Lock produced no evidence suggesting that, as part of the joint task force, the state had a say in the federal government's custody determinations. To the contrary, the record showed that state prosecutors attempted to have Lock produced in state court by serving a writ of habeas corpus *ad prosequendum* on the federal authorities, which those authorities refused to honor.

The state court also determined that Lock had not suffered prejudice because of the delay. For purposes of the right to a speedy trial, prejudice means things such as unnecessary pretrial incarceration, increasing the anxiety and concern of the accused, and impairing the defense. *See Barker*, 407 U.S. at 532. Here, the court of appeals correctly found that because Lock was already serving two life sentences during the delay occasioned by the federal prosecution, he could not have suffered prejudice in the form of unnecessary pretrial incarceration. Lock did not contend that the delay in bringing him to trial on the prostitution crimes caused him anxiety or concern, so this form of prejudice was not a factor.

In state court, Lock did argue that his defense was impaired because, during the delay, the state was able to convince additional witnesses to testify against him. The court of appeals rejected this argument on the ground that Lock had not shown that the delay contributed to his co-defendants' decisions to testify against him. This

determination by the state court was not unreasonable. Moreover, even if the delay gave the state more time to convince witnesses to testify against Lock, the resulting prejudice would not have resulted in a speedy-trial violation. The speedy-trial factors constitute a balancing test, not a rigid formula. *See Barker*, 407 U.S. at 530. And here, as I have discussed, another factor—the reason for the delay—strongly supported the state, for the state could not have compelled the federal government to produce Lock for trial. That factor outweighs any prejudice Lock may have suffered from the state's having additional time to prepare its case.

For these reasons, Lock is not entitled to relief on his speedy-trial claim.

## B.     Prosecutorial Misconduct

Lock brings a claim for prosecutorial misconduct based on the prosecutor's remaining silent when Hankins testified on cross-examination that the district attorney had not promised him anything in exchange for his testimony. Lock claims that the prosecutor failed to correct testimony that the prosecutor knew was false, in violation of the Due Process Clause of the Fourteenth Amendment. *See Napue v. Illinois*, 360 U.S. 264, 269 (1959).

The primary defect in Lock's claim is that there is no evidence that Hankins testified falsely. Hankins testified that he wrote a letter to the district attorney in which he said he was willing to testify against Lock and others and that he "wanted consideration for that testimony in [his] sentence." ECF No. 10-5 at 265–66. Hankins also testified that, as of the time of Lock's trial, the district attorney had not promised him any such consideration. On direct appeal, the state court determined that Lock produced no evidence showing that, contrary to Hankins' statements at trial, the prosecutor had

promised him consideration in exchange for his testimony. *See* ECF No. 10-3 at 173 of 271. More precisely, the state court determined that there was not even evidence that the prosecutor knew at trial that he would later grant Hankins consideration for his testimony. *Id.* Clearly, if the prosecutor did not know that he intended to grant Hankins consideration, Hankins' testimony could not have been false, and the prosecutor could not have had a duty to correct the testimony. These factual determinations by the court of appeals were not unreasonable, and therefore Lock is not entitled to habeas relief on his claim of prosecutorial misconduct.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that Michael Lock's petition for a writ of habeas corpus is **DENIED**. The Clerk of Court shall enter final judgment. Pursuant to Rule 11 of the Rules Governing § 2254 Cases, I find that the petitioner has not made the showing required by 28 U.S.C. § 2253(c)(2), and therefore I will not issue a certificate of appealability.

Dated at Milwaukee, Wisconsin, this 4th day of August, 2021.

s/Lynn Adelman
LYNN ADELMAN
District Judge